UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Crim. No. 08-246 (DSD/SRN) |
| **Plaintiff,** | |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| **Aaron Jay Lemon,** | |
| **Defendant.** | |

Richard Newberry, United States Attorney's Office, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff United States of America

John Fossum, Fossum Law Office LLC, 516 South Water, Suite 103, Northfield, Minnesota 55057, for Defendant Aaron Jay Lemon

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Aaron Jay Lemon's Motion to Suppress Search and Seizure Evidence (Doc. No. 12), Motion to Suppress Statements (Doc. No. 13), and Motion to Suppress Wiretap Evidence (Doc. No. 18).[1]  This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

**I.    BACKGROUND**

An indictment was filed against Defendant Aaron Jay Lemon on August 5, 2008, charging him with one count of production of child pornography in violation of 18 U.S.C. § 2251(a); one count of distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), and 2256; and one count of possession of child pornography in

---

[1] The Court will address Defendant's non-dispositive motions in a separate Order.

violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  This Court held a pretrial motion hearing on October 6, 2008, at which St. Paul Police Sergeant William Haider testified.  The Court also received into evidence a search warrant executed at 376 Labore Road, #206, Little Canada, Minnesota 55117 (Gov't Ex. 1), and an audio recording of an interview of Defendant on June 17, 2008 (Gov't Ex. 2).

In the motions presently before the Court, Defendant seeks the suppression of evidence seized pursuant to the search warrant on the grounds of probable cause and the reasonableness of the executing officers' knock-and-announce technique.  He also seeks suppression of the statement he made on June 17, 2008 to Sergeant Haider.[2]

## II.     The Search Warrant for 376 Labore Road, #206, Little Canada, Minnesota

Sergeant Haider has been a law enforcement officer for twenty-four years.  He is currently assigned to the Minnesota Internet Crimes Against Children Task Force (MICAC).  On June 12, 2008, Sergeant Haider applied for a search warrant for 376 Labore Road, #206, in Little Canada, Minnesota.

### A.     Facts in Sergeant Haider's Supporting Affidavit

Sergeant Haider's supporting affidavit sets forth the following information.  The Internet is a common tool for individuals to view images of children and to interact with minors for the purpose of sexual gratification.  These individuals frequently groom children for sex through real-time communications or exchanging images via electronic communications. Every electronic communication sent from a computer goes through an Internet Service Provider (ISP),

---

[2] Defendant also brought a motion to suppress wiretap evidence, but as there was no such evidence obtained in the investigation of this case, the motion should be denied as moot.

which assigns an Internet Protocol (IP) address to the client's computer.  The IP address is embedded in the electronic communications and can be used to identify the sender.

Individuals who seek sexual gratification involving children often store images of child pornography on their computers, often for months or years.  Such images are rarely sold openly; most child pornography is distributed privately between collectors.  The use of laptop computers has become increasingly widespread among such individuals due to mobility and the availability of wireless Internet access.  Laptop computer users frequently use removable computer storage devices to store data.

On June 25, 2007, the Federal Bureau of Investigation (FBI) in San Francisco, California, executed a search warrant at the workplace of George Halldin.  An FBI investigation had revealed that Halldin was using Google "Hello" software to chat with other individuals and share images of child pornography.  During a forensic examination of Halldin's computer, the FBI discovered evidence of several chats about and exchanges of child pornography between Halldin and screen name b2003 in November and December of 2006.  Based on the language used in the chats and the nature of the pornography exchanged, Sergeant Haider believed from his training and experience that b2003 was a "preferential collector," who likely retained pornographic images for a long period of time.  Sergeant Haider also knew that such collectors compulsively and systematically save their pornographic material and rarely destroy their collections.

In October or November of 2007, the FBI issued a subpoena to Google for username b2003.  The information received showed a user email of oxyclean2005@yahoo.com.  Using this email and other account information provided, the FBI issued a subpoena to Comcast for subscriber/user information for IP address 24.118.122.226.  Comcast's response identified the

account holder as Marilyn Lemon, 376 Labore Road, #206, St. Paul, Minnesota 55117.

The investigation was transferred to the Minneapolis FBI office, and agents there refreshed the investigation by issuing a subpoena to Yahoo! on January 4, 2008. The account information traced back to Comcast subscriber/user Marilyn Lemon, 376 Labore Road, #206, St. Paul, Minnesota 55117; telephone number, 651-808-4846. The FBI then issued a subpoena to T-Mobile for subscriber information for telephone number 651-808-4846, and learned the account holder was Aaron Lemon, with an address of 376 Labore Road, #206, St. Paul, Minnesota 55117. The FBI ascertained with Google that account b2003 was currently active, and the user had last logged in on April 30, 2008. The account holder was listed as Marilyn Lemon, 376 Labore Road, #206, St. Paul, Minnesota 55117; telephone number, 651-808-4846. A MICAC officer confirmed with an apartment property manager that Marilyn Lemon and Aaron Lemon lived at 376 Labore Road, #206, in Little Canada, Minnesota.

### B.     Probable Cause

Defendant argues that the information in Sergeant Haider's affidavit was stale, and thus, there was no probable cause for the warrant.

A reviewing court should accord "great deference" to a determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983) (citation omitted). The duty of a judge who signs a warrant is "to make a practical, common-sense decision whether, given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. The task for the reviewing court is to ensure there was "a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Id. at 236 (quotation omitted) (ellipsis and modification in Gates).

No bright-line rule exists to determine whether information in a supporting affidavit is stale. United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). The question "depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." Id. A reviewing court must consider the factor of time in the context of the case and the type of crime being investigated. Id.

In United States v. Maxim, the Eighth Circuit held that information as much as three years old could provide probable cause for a warrant to search for evidence of illegal possession of firearms "because possession is a continuing offense and because firearm enthusiasts tend to keep their weapons for long periods of time." 55 F.3d 394, 397 (8th Cir. 1995). In United States v. Summage, the Eighth Circuit reviewed a supporting affidavit that failed altogether to include the date on which child pornography had allegedly been produced. 481 F.3d 1075, 1078 (8th Cir. 2007). The court nonetheless concluded that "it could be presumed that Summage would maintain in his possession the video and photographs that he made of the sexual encounter between Doe and the waiting woman. Thus, the affidavit's failure to include the date of that encounter is not fatal to a determination that probable cause existed for a search of Summage's new residence." Id. at 1078. In United States v. Anderson, Crim. No. 07-236 (RHK/JJG), 2007 WL 2908172, at *3 (D. Minn. Oct. 2, 2007), a two-year passage of time was found not to undermine probable cause given an agent's averment in his affidavit that the defendant was likely to maintain his collection of pornography.

Several factors in the present case minimize the eighteen-month period of time between the exchange of pornography between Defendant and Halldin and the application for the search

warrant.  The first factor is the nature of the crimes charged against Defendant, one of which is the possession of child pornography.  Possession is a continuing offense, see Maxim, 55 F.3d at 397, and child pornography enthusiasts often retain pornographic material for years after acquiring it, see United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992), a fact which Sergeant Haider was careful to include in his affidavit.  Second, the type of evidence sought was in electronic format, and as Sergeant Haider attested, child pornography collectors frequently store images on their computers or removable computer storage devices for long periods of time.  From the language used by b2003 in the chats with Halldin, Sergeant Haider believed that b2003 traded in child pornography and was probably a preferential collector who compulsively and systematically saved his material.  Third, FBI agents in Minneapolis did refresh some of the information they had received from the San Francisco FBI office by issuing subpoenas to Yahoo!, T-Mobile, and Google.  Agents learned from Google in April 2008 that account b2003 was currently active and contained the same account information as in 2006.

     Defendant depends exclusively on United States v. Rugh, 968 F.2d 750 (8th Cir. 1992), to support his position that the information in Sergeant Haider's affidavit was too stale to provide probable cause.  Rugh is distinguishable from this case, however, on the point Defendant advances.  Moreover, even where Rugh would apply, it supports the Government's position.  The trial court in Rugh found a search warrant to be invalid because the police did not refresh information obtained sixteen months before.  Id. at 753.  The Eighth Circuit did not consider this finding because it was not appealed.  Thus, Rugh does not stand for the proposition that sixteen-month old information is stale per se, as Defendant argues.  Rather, a careful reading of Rugh reveals that if the court had considered whether the information was indeed stale, it might have

6

disagreed with the lower court.

> Rugh's letters indicated that he was conducting a successful, nationwide distribution ring for child pornography. Where the affidavit recites facts indicating the presence of an ongoing, continuous criminal enterprise, the passage of time between the receipt of information and the search becomes less critical in assessing probable cause. . . . Talbot stated it was his expert opinion that pedophiles retain child pornography for a long time. The information provided by Talbot supports the finding that Talbot believed Rugh to be a pedophile and that Talbot believed Rugh would have retained child pornography at his home some sixteen months after the latest evidence linking him to distribution of the material.

Id. at 754 (internal citations omitted).

Whether this Court considers the relevant period of time as beginning in November 2006 or April 2008 is of no consequence. The result is the same. In the context of this case and the nature of the crimes under investigation, the information in Sergeant Haider's affidavit was not stale, and probable cause existed for the search warrant.

### C.     The Leon Good Faith Exception

Even if Sergeant Haider's affidavit did not provide probable cause for the search warrant, the "good faith" exception articulated by the United States Supreme Court in United States v. Leon, 468 U.S. 897, 920 (1984), would apply to authorize the admissibility of evidence seized pursuant to the warrant. In Leon, the Court ruled that evidence obtained pursuant to a defective search warrant was nonetheless generally admissible "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id. There are four instances in which the good faith exception will not apply, one of which is when a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. at 923 (quotation omitted). This is the only instance put forth by Defendant here.

Defendant specifically finds fault with Sergeant Haider's failure to freshen information regarding his trading or possession of child pornography. But as Sergeant Haider stated in his affidavit, it is common for collectors of child pornography to retain images on their computers or removable storage devices for many years. In addition, Sergeant Haider explained that the language and behavior of b2003 and Halldin were indicative of preferential collectors of child pornography, who compulsively and methodically save their collections.

The Court finds that the officers who executed the search warrant acted in good faith because Sergeant Haider's affidavit provided several facts to support a belief that child pornography would be found on Defendant's computer or other storage devices located at #206 of 376 Labore Road in Little Canada, Minnesota, when the warrant was executed on June 17, 2008. Specifically, the affidavit established that (1) preferential collectors retain their material for years and rarely destroy their collections; (2) Defendant exhibited the characteristics of a preferential collector; (3) Defendant's user name b2003, through which he had previously exchanged pornographic images, was still in use as of April 30, 2008; and (4) the account information for user name b2003 had not changed since the exchange of pornographic material in late 2006. Thus, <u>Leon</u> would apply to justify the seizure of evidence even if probable cause did not exist in the first instance. See <u>Rugh</u>, 968 F.2d at 753-54.

### D.     The Knock and Announce Requirement

Defendant claims Sergeant Haider failed to knock and announce his presence before entering Defendant's apartment with a passkey and executing the search warrant. To the contrary, the only evidence before the Court demonstrates that Sergeant Haider knocked and announced his presence and intention to execute a search warrant, and then waited for thirty to

8

forty-five seconds before entering the apartment. After Sergeant Haider entered, he announced his presence and intention a second time. The Court finds that the knock-and-announce technique was reasonable. See Wilson v. Arkansas, 514 U.S. 927, 930, 934 (1995) (holding that a knock-and-announce procedure must be analyzed under the Fourth Amendment's reasonableness standard).

**III.     Defendant's Statement to Sergeant Haider**

After Sergeant Haider and the other officers entered Defendant's apartment, they located Defendant and his mother, Marilyn Lemon. Sergeant Haider explained why the officers were there, and he instructed Defendant and his mother to stand in place while the apartment was secured. After the search warrant was executed, Sergeant Haider interviewed Defendant in a bedroom inside the apartment. Sergeant Haider told Defendant that he was not under arrest, that he would not be arrested that day, and that he did not have to answer any questions, but he did not fully advise Defendant of his Miranda rights. Defendant readily agreed to talk to Sergeant Haider. During the interview, no restraints were used, and Sergeant Haider did not make any threats or promises. Defendant understood the questions asked of him, and the atmosphere of the interview was relaxed. Defendant was twenty-two years old at the time. He was not denied any physical needs. The interview lasted approximately forty-three minutes, and Defendant admitted to exchanging and possessing child pornography. He was not arrested after the interview.

A law enforcement officer must advise a person of his Miranda rights before interrogating him in a custodial setting. Illinois v. Perkins, 496 U.S. 292, 297 (1992). With respect to the question of custody, "the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'"

9

Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)).  The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."  Stansbury v. California, 511 U.S. 318, 323 (1994).  The critical question "is how a reasonable man in the suspect's position would have understood his situation."  Berkemer, 468 U.S. at 442.  The Eighth Circuit has enumerated several "indicia of custody" to aid courts in determining whether a Miranda warning was required:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

In the case at hand, the factors weigh in favor of finding that Defendant was not in custody during the interview.  Sergeant Haider told Defendant at the beginning of the interview that his participation was voluntary, that he was not under arrest, and that he would not be arrested.  Defendant was not restrained, and there was no evidence that he was prohibited from moving around during the interview.  Defendant voluntarily acquiesced to the questioning, and no strong arm tactics or deceptive stratagems were used.  The interview occurred in Defendant's home, and no other officers were present in the bedroom, which indicates that the immediate atmosphere was not police dominated.  Defendant was not arrested at the end of the questioning.

The only factor favoring a finding of custody is that Sergeant Haider did not tell Defendant that he was free to leave or that he could ask the officers to leave. This factor standing alone, however, does not counterbalance the others. The Court concludes that Defendant was not in custody during the interview, and therefore, no <u>Miranda</u> warning was required. Accordingly, Defendant's motion to suppress his statement should be denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Aaron Jay Lemon's Motion to Suppress Search and Seizure Evidence (Doc. No. 12) be **DENIED**;

2. Defendant Aaron Jay Lemon's Motion to Suppress Statements (Doc. No. 13) be **DENIED**; and

3. Defendant Aaron Jay Lemon's Motion to Suppress Wiretap Evidence (Doc. No. 18) be **DENIED AS MOOT**.

Dated: October 22, 2008

    s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 6, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.